THE TUCKAHOE AND CAPE MAY RAILWAY COMPANY and
EDWARD R. WOOD, appellants,

*v.*

PHILIP P. BAKER, receiver of the Philadelphia and Seashore
Railway Company, respondent.

The allegation of insolvency, made with respect to a railway corporation in
a bill for a receiver, is sustained by proof that the corporation had acquiesced
in the construction of its road-bed by a companion corporation, which had
either paid for or pledged its own credit for the cost of such construction, and
that debts honestly due and owing therefor were outstanding and suits pending
that the defendant corporation had neither means nor prospects of settling.

On appeal from a decree advised by Vice-Chancellor Pitney
appointing a receiver, in *Baker, Receiver,* v. *Tuckahoe and Cape
May Railway Co.*

*Mr. Theodore Runyon,* for the appellants.

*Mr. Howard Carrow,* for the respondent.

The opinion of the court was delivered by

GARRISON, J.

The bill of complaint alleges the insolvency of "The Tucka-
hoe and Cape May Railway Company," and prays the appoint-
ment of a receiver. Two rival boards of directors, each claiming
to represent the defendant corporation, have filed answers in its
behalf—one admitting, the other denying, the insolvency of the
company. The fact of insolvency is the only issue in the case.
The defendant is a railway company in course of construction,
and the *status* of its business is, that its roadbed is almost but
not entirely completed, and that several thousand ties that had
been delivered at or near its line have been piled up and all fur-
ther work discontinued. It is a further fact that this company

took no active part in the construction of its own road; that it has opened no books; received no subscriptions; has had no bank account; has issued no certificates of stock; has given, in fine, no evidence of corporate existence, save that one of the rival boards of direction, after the legality of its formation had been called in question, delivered to the complainant's corporation sixteen hundred shares of defendant's stock, which was accepted in payment of an account stated.   In order to understand how a corporation, without money in its treasury or assets at its disposal, could have its road constructed for it, it is necessary to look at the entire enterprise, of which the defendant's road was an integral part.   The scheme, as a whole, comprised the building of a railway from Winslow Junction via Tuckahoe to Cape May city.   To accomplish this object, two companies were organized, the Philadelphia and Seashore Railway Company (the complainant's road) and the Tuckahoe and Cape May Railway Company (the defendant), the former to build and operate the road from Winslow to Tuckahoe, the latter, the road from Tuckahoe to Cape May, the incorporators being identical. From the first, all corporate action was done in the name of the Philadelphia and Seashore Railway Company, the other company remaining utterly passive while its own directors, under another corporate name, were constructing for it its road.   The Philadelphia and Seashore Railway Company did not undertake itself the construction of the two roads, but by a contract entered into between it and E. R. Wood, the said Wood agreed to construct and equip both roads, and the Philadelphia and Seashore Railway Company agreed to pay him therefor, in its stock and bonds, $1,800,000, $700,000 of which were on account of the construction of the defendant's road.   In this contract it was, among other things, agreed by section 5, that until $500,000 in sales or subscriptions had been realized, the said Wood should not be obliged to use his own credit in making purchases and contracts for the construction of the two roads, but should have authority from the Philadelphia and Seashore Railway Company to pledge its credit therefor.   No such sum of money ever having been realized, Wood did, as he lawfully might, pledge the

credit of the complainant's company in all important contracts for work and material furnished on account of the construction of both roads, a large part of which indebtedness remains due and unpaid, and constitutes the indebtedness with respect to which the defendant's road is now alleged to be insolvent.

From this general statement of the relationship between these two companies and of the manner in which the defendant corporation had its road-bed constructed for it and its other necessary expenses met, it is evident that to the full extent of all honest charges for work and material expended upon or furnished to it, it is the debtor of somebody—if not directly of those who hold the claims, then of the Philadelphia and Seashore Railway Company. Take as an illustration the claim of the largest creditor, E. A. Tennis, who has at this time a suit pending against the defendant corporation for $68,000. This suit is for work and labor which it is admitted were performed in the construction of the defendant's road, under a written contract executed by Wood in the name of the complainant's corporation, under the fifth section of the contract above referred to. The defendant corporation is certainly indebted on that account—if not directly to Tennis, then to the Seashore Railway Company; and, upon the question of insolvency, it seems to me immaterial to decide who may maintain an action at law upon this account or at whose hands a recovery may primarily be had. The substantive fact is that the defendant corporation owes for work and labor a sum of money greater than it can pay. Upon the question of insolvency, that is conclusive. That there are outstanding quite a number of claims of this character, is not questioned by anybody. It is one of the facts of this case. It is equally well established that the defendant corporation has not the money or the assets with which to make payment, and that it does not, in its treasury, its stock, its bonds or its management, give evidence of any ability to meet these payments and to resume its business in the "short time" mentioned in the statute, or with that "safety to the public and advantage to the stockholders" that is made the criterion of the chancellor's jurisdiction. In fine, the corporation is distinctly insolvent, a condition that is rendered

hopeless by its factional dissensions and the consequent neglect of its affairs and impairment of its credit. With this fact established, it is unnecessary upon this appeal to inquire whether the complainant's corporation is a creditor of the defendant, or whether it became a stockholder by the acceptance of the sixteen hundred shares of stock. It is one or the other, and in either character its receiver may maintain this suit.

The decree of the chancellor is affirmed, with costs.

*For affirmance*—DEPUE, DIXON, GARRISON, MAGIE, REED, SCUDDER, VAN SYCKEL, WERTS, BOGERT, BROWN, CLEMENT, SMITH, WHITAKER—13.

*For reversal*—None.